# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re THESSA ROY<br><br>Debtor. | Case No. 19-13254<br>Chapter 7 |
| THESSA ROY<br>　　　　Plaintiff,<br><br>　　v.<br><br>NAVIENT SOLUTIONS, LLC, and<br>NATIONAL COLLEGIATE STUDENT<br>LOAN TRUST 2007-2<br><br>　　　　Defendants. | Adv. Pro. No. |

## PLAINTIFF'S COMPLAINT

Plaintiff Thessa Roy files this Complaint against Defendants NAVIENT SOLUTIONS LLC ("NSL") and the NATIONAL COLLEGIATE STUDENT LOAN TRUST (collectievely, "Defendants") on personal knowledge as to Plaintiff's own acts and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

Not all loans made to students are non-dischargeable student loans, including the loans at issue in this action. In fact, only three types of educational loans are excepted from discharge under 11 U.S.C. § 523(a)(8): (1) federal loans and loans made directly by nonprofit colleges and universities; (2) conditional educational grants; and (3) qualified education loans made by private lenders. Defendants have originated and/or serviced dischargeable consumer loans that are not

"educational loans" or "qualified education loans" as that term is defined in the Higher Education Act, the Internal Revenue Code, and the Bankruptcy Code. Such loans have no protection under section 523(a)(8) and are automatically discharged upon entry of a discharge injunction.

# I.

# PARTIES

**A.**  **Plaintiff**

1. Thessa Roy is a citizen of the State of New York residing in this District.

**B.**  **Defendants**

1. NAVIENT SOLUTIONS, LLC is a business entity that in the ordinary course of business regularly, on behalf of itself or others, engages in the servicing and collection of consumer debt. NAVIENT SOLUTIONS, LLC is a national company with its principal place of business in Wilkes-Barre, Pennsylvania.

2. NATIONAL COLLEGIATE STUDENT LOAN TRUSTS 2007-2 is a business entitty that in the ordinary course engage in the ownership and collection of consumer debt. NATIONAL COLLEGIATE STUDENT LOAN TRUSTS 2007-2 is a Delaware statutory trust and can be served through its agent, Transworld Systems, Inc., located at PO Box 4275, Norcross, GA, 30091.

# II.

# JURISDICTION AND VENUE

2. This Adversary Proceeding is brought under Case Number 19-13254.

3. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b). This is a core proceeding under title 11 because it concerns a determination as to the dischargeability of a debt.

4. This Adversary Proceeding is brought pursuant to 11 U.S.C § 523(a)(8), 15 U.S.C § 1601, 15 U.S.C. § 1692 and Federal Rules of Bankruptcy Procedure Rule 7001.

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1409 because this matter arises in and is related to a bankruptcy case in this district.

## IV.

## STATEMENT OF FACTS

### A.   The Distinction Between Non-Dischargeable And Dischargeable Educational Debt

1. All federal student loans and loans made directly by non-profit colleges and universities are excepted from discharge under section 523(a)(8)(A)(i) absent an affirmative showing of "undue hardship."

2. Private education loans, on the other hand, have limited protection from discharge under section 523(a)(8)(B).

3. Section 523(a)(8)(B) of the Bankruptcy Code excepts from discharge "any other educational loan" that is a "qualified education loan" as defined in section 221(d)(1) of the Internal Revenue Code.

4. Section 221(d)(1) defines a "qualified education loan" as any indebtedness incurred solely to pay for "qualified higher education expenses." "Qualified higher education expenses" are in turn defined in section 221(d)(1) as expenses incurred to cover the "cost of attendance" at a Title IV eligible institution by an "eligible student." A Title IV eligible institution is one recognized by the Department of Education under Title IV of the Higher Education Act. "Cost of attendance" is term of art found in section 472 of the Higher Education Act at 20 U.S.C. § 1087ll, which includes tuition, fees, room, board, books, and living expenses (hereinafter referred to as "Qualified Student Loans").

3

5. Consumer loans made to persons to cover expenses at non-eligible institutions, expenses in excess of the "cost of attendance" or to ineligible students are not Qualified Education Loans, and are often times not even "educational loans." These loans remain dischargeable under the Bankruptcy Code (hereinafter referred to as "Consumer Education Loans").

6. Where confusion exists in determining whether an educational debt is a Qualified Education Loan or a Consumer Education Loan, the Bankruptcy Code places the burden on the creditor to establish by a preponderance of the evidence that the educational debt in question is excepted from discharge.[1]

6. Some creditors have also disguised their Consumer Education Loans as "nonprofit loans" in order to gain exception from discharge under section 523(a)(8)(A)(i).

7. Some of the Plaintiff's loans are held by National Collegiate Trust 2007-2.

8. The National Collegiate Trusts are a series of 15 securitized trusts containing more than $10 billion in securitized private student debt.

9. The National Collegiate Trusts were the brainchild and creation of the First Marblehead Corporation ("FMC").

10. During the early 2000s, FMC partnered with multiple large banks, such as JP Morgan and Bank of America, to originate private student loans that would be immediately purchased by FMC, and securitized into the National Collegiate Student Loans Trusts.

11. FMC also designed a way to give the loans the appearance of non-profit educational loans by absorbing a formerly receptacle non-profit institution called The Education Resources Institute and having TERI guaranty the student debts against non-payment.

---

[1] *See In re Bronsdon*, 435 B.R. 791, 796 (B.A.P. 1st Cir. 2010) ("The creditor bears the initial burden of establishing that the debt is of the type excepted from discharge under § 523(a)(8). Once the showing is made, the burden shifts to the debtor to prove that excepting the student loan debt from discharge will cause the debtor and her dependents 'undue hardship.'").

12. Whatever TERI might have begun as, by 2004, TERI was no longer a *bona fide* non-profit institution.

13. By 2004, TERI was merely a subsidiary of the First Marblehead Corporation whose profits inured directly or indirectly to the First Marblehead shareholders. TERI was housed in FMC's offices, and FMC absorbed most of their staff and origination and servicing responsibilities.

14. Indeed, NCT 2007-2 referred to TERI as nothing more than a "debt collector" for the NCTs in TERI's bankruptcy proceedings.

15. On the orders of FMC, TERI began bending and ignoring origination criteria around 2006 to feed the private student debt securitization market.

16. The loans being originated often times had 12-15% interest rates, and massive origination fees.

17. Because of this lending behavior, default rates on FMC loans swelled to over 50%.

18. Because of this increase in defaults, TERI was forced to file for bankruptcy protection in in 2008.

19. During that time, TERI voided and rejected all of its guaranty agreements with the lending partners of FMC.

20. TERI also refunded hundreds of millions of dollars in guarantee fees to the originating banks and Defendants.

21. Whatever TERI guarantee may have existed was already voided, and the NCT Defendants should not be permitted to use the "dead hand" of TERI to render any of the Plaintiff's loans non-dischargeable.

5

22.     Despite this, the NCTs have continued to represent to bankruptcy courts across the country that its loans are still guaranteed by TERI and thus are non-dischargeable under section 523(a)(8)(A)(i).

**B.     Plaintiff Borrows Certain Loans and Files For Bankruptcy.**

23.     Plaintiff attended Columbia University on and off between 2005 and 2018.

24.     During that time, Plaintiff received federal financial aid.

25.     During that time, Plaintiff also borrowed several private loans and "direct to consumer" loans from Defendants or their predecessors in interest (collectively the "Private Loans").

26.     The total amount borrowed from Navient was approximately $55,000.

27.     The total amount borrowed from JP Morgan was approximately $30,000. This debt was later assigned to Defendant NCT 2007-2.

28.     Upon information and belief, these loans, when considered against the Plaintiff's federal student loans, exceeded the cost of attendance, either in whole or in part, of Columbia University during the relevant years.

29.     Owing to circumstances beyond her control, Plaintiff filed for bankruptcy in this Court in October 2019.

30.     Once granted, all debts not excepted from discharge under section 523(a) will be discharged including the Private Loans, either in whole or in part.

31.     In the alternative, Plaintiff requests discharge on the grounds of "undue hardship."

32.     Plaintiff currently has about $276,000 in education-related debt, including approximately $110,000 in federal debt, and $160,000 in private debt.

33.     Plaintiff owes $122 per month for her federal education-related debt, and $1,630 per month for her private education-related debt.

6

34. Plaintiff's current take-home income is $3,760 per month.

35. Plaintiff's necessary and reasonable expenses, including $1,500 in rent, come to $2,912.

36. Plaintiff's combined necessary and reasonable expenses and the balance due each month on her private education-related debt (totaling $4,412) exceed her take-home income.

37. Plaintiff does not foresee her financial situation improving in the future.

38. Plaintiff has made an honest and good faith attempt to repay these loans on the original terms since they became due.

39. Repayment of the loans would therefore constitute an "undue hardship" on Plaintiff.

### III.

### CLAIMS FOR RELIEF

**A.   Count One: Determination of Dischargeability**

40. Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

41. Plaintiff's Private Loans are to be discharged either in whole or in part because they are not the type of student loans entitled to protection under section 523(a)(8).

42. In the alternative, Plaintiff is entitled to discharge of the Loans because repayment would constitute an "undue hardship."

43. Accordingly, Plaintiff prays this Court discharge her student debt in part or in total.

## IV.

## **PRAYER**

44. In light of the foregoing, Plaintiff requests that Defendants be cited to appear and judgment be entered against Defendants for:

**(1)** declaratory and injunctive relief;

(2) determination of dischargeability;

**(2)** other such relief as the Court deems just and proper.

Respectfully submitted,

/s/ Austin Smith

January 8, 2020

Austin Smith
SMITH LAW GROUP
3 Mitchell Place
New York, New York 10017
Telephone: (917) 992-2121
Austin@acsmithlawgroup.com

8